In re CARPENTERTOWN COAL
& COKE COMPANY, INC.,
Debtor.

UNITED STATES FUEL
COMPANY, Movant,

v.

CARPENTERTOWN COAL & COKE
COMPANY, INC., Respondent.

Bankruptcy No. 89–21629.
Motion No. C & L–1.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 26, 1994.

Joan G. Dorgan, Pittsburgh, PA, for debtor/respondent Carpentertown Coal & Coke Co., Inc.

Vincent J. Restauri, Sewickley, PA, for Official Committee of Unsecured Creditors.

Stanley E. Levine, Pittsburgh, PA, for movant U.S. Fuel Co.

Linda S. Menrad, Philadelphia, PA, for Ins. Co. of North America.

Bruce Campbell, Pittsburgh, PA, for UMWA Combined Benefit Fund.

*Opinion*

WARREN W. BENTZ, Chief Judge.

*Factual Background*

United States Fuel Company ("U.S. Fuel") seeks repayment from Carpentertown Coal & Company, Inc.'s ("Debtor") bankruptcy estate, as an administrative expense, amounts which it has paid pursuant to the Coal Industry Retiree Health Benefits Act of 1992 (the "Coal Act"). 26 U.S.C. § 9701 *et seq.*

Prior to the filing of its voluntary Petition under Chapter 11 of the Bankruptcy Code on June 16, 1989, the Debtor conducted surface mining and deep mining operations. During the Debtor's reorganization proceedings, its activity was limited to reclamation of the property which it had formerly mined. As reclamation was completed, the Debtor sold its equipment in a series of sales approved by the Court. The last of such sales was con-

firmed by the Court on December 4, 1992, leaving only cash in the Debtor company.

On September 30, 1993, the Debtor received notification that it had been assigned responsibility for premiums pursuant to the Coal Act. The Coal Act is intended to provide retiree health benefits for coal miners and their dependents. The Coal Act assesses premiums for such purpose against signatories to any National Bituminous Coal Wage Agreement who are still engaged in business. Under the Coat Act, "a person shall be considered to be in business if such person conducts or derives revenue from any business activity, whether or not in the coal industry." 26 U.S.C. § 9701(c)(7).

Related persons are jointly and severally liable for premium payments. 26 U.S.C. § 9704(a). U.S. Fuel is a "related person" to the Debtor.

As a related person, U.S. Fuel elected to begin making the monthly premium payment to avoid any possible noncompliance penalty provisions. U.S. Fuel has made four monthly payments totalling $253,409.64. U.S. Fuel has projected that its estimated gross cost under the Coal Act will be $3,441,585.

### Assertions

U.S. Fuel asserts that premiums due under the Coal Act are considered postpetition taxes which must be paid as they become due. Accordingly, U.S. Fuel asserts that any postpetition payments made by U.S. Fuel constitute an administrative expense under 11 U.S.C. § 503 and 507 entitled to priority.

The Debtor asserts that the assessment of premiums against it was in error because it is not "in business" within the meaning of that term under the Coal Act. Further, the Debtor asserts that, since there is no right to payment from the Debtor, U.S. Fuel alone is liable as a "related person" and U.S. Fuel is not a co-debtor subrogated to the rights of the taxing authority.

### Discussion

■ The Coal Act places the burden of providing retiree health benefits on signatories of National Bituminous Coal Wage Agreements if they conduct or derive reve-nue from any business activity, whether or not in the coal industry. 26 U.S.C. § 9706(a) provides:

For purposes of this chapter, the Secretary of Health and Human Services shall, before October 1, 1993, assign each coal industry retiree who is an eligible beneficiary to a signatory operator which (or any related person with respect to which) *remains in business* ...

26 U.S.C. § 9706(a) (emphasis added). § 9701(c)(7) of the Coal Act provides:

[f]or purposes of this Chapter, a person shall be considered to be in business if such person conducts or derives revenues from any business activity, whether or not in the coal industry.

26 U.S.C. § 9701(c)(7).

It is apparent from the plain language of the Coal Act that those operators who continue to do business, even if their profits are not derived from the sale of coal, will be held accountable to industry retirees. In *In re Chateaugay Corp.*, 154 B.R. 416 (SDNY1993), the Court assessed liability for premium payments against LTV as:

a direct consequence of its continued corporate existence; the Coal Act only imposes obligations on signatories which are still 'in business.' Thus the charges stem directly from LTV Steel's continued operation in chapter 11, and as such are costs of doing business best classified as 'administrative expenses' within the Bankruptcy Code scheme.

*Id.* at 422.

■ The Debtor's case is easily distinguished from that of LTV. LTV operated as a debtor-in-possession and continues to operate subsequent to plan confirmation. Although it ceased mining coal, its business operations continued. By contrast, the Debtor has not conducted any business either in the coal industry or in any other respect since the commencement of its bankruptcy in 1989. Its activities have consisted solely of reclamation and liquidation. Any reclamation activity in which it engaged was conducted for the benefit of its creditors in order to avoid a large environmental claim or one for bond forfeiture. As each parcel of real estate was reclaimed, it was sold. As each

item of equipment became no longer necessary for reclamation, it also was sold. No funds were reserved for the benefit of Debtor and it made no profit. The funds derived from the sale of equipment and real property have been held in escrow solely for the benefit of the creditors with valid claims against the estate. The Debtor did not conduct any activities for profit and cannot be considered as remaining "in business" under the Coal Act.

 Neither the language of the Coal Act nor the *Chateaugay* opinion compels a result by which a company which no longer operates and is incapable of amassing profits, must pay health benefit premiums. We find that the Debtor does not meet the statutory criteria for the imposition of premium payments as the Debtor has not been "in business" since the commencement of this Chapter 11 case. All of the Debtor's assets have been liquidated, and all that remains is a distribution of the remaining proceeds to creditors. Accordingly, we need not address the subrogation issue. An appropriate Order will be entered.